

IN THE SUPREME COURT OF THE STATE OF DELAWARE

KELLY CHURCHILL,                    *
                                    *
    Defendant Below-                *
    Appellant,                      *
                                    *
    v.                              *        No. 195, 2002
                                    *
STATE OF DELAWARE,                  *
                                    *
    Plaintiff Below-                *
    Appellee.                       *

_____

ON APPEAL FROM THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

_____


APPELLANT'S OPENING BRIEF


                            DEBORAH L. CAREY, ESQUIRE
                            ASSISTANT PUBLIC DEFENDER
                            OFFICE OF THE PUBLIC DEFENDER
                            45 THE GREEN
                            SYKES BUILDING
                            DOVER, DE 19901
                            (302) 739-4476, EXT. 207
                            BAR I.D. 002852
                            ATTORNEY FOR DEFENDANT-BELOW
                            APPELLANT

JULY 29, 2002

## TABLE OF CONTENTS

TABLE OF CITATIONS                                                    i

NATURE AND STAGE OF PROCEEDINGS                                       1

SUMMARY OF ARGUMENTS                                                  2

STATEMENT OF FACTS                                                    3

ARGUMENTS

I.    THE TRIAL COURT ABUSED ITS DISCRETION BY
      DENYING DEFENDANT'S MOTION FOR MISTRIAL
      AFTER OFFICER BERNA IMPERMISSIBLY COMMENTED
      ON THE EVIDENCE AND VOUCHED FOR THE
      CREDIBILITY OF OFFICERS DIGIROLOMO AND LAWSON.    8


II.   THE TRIAL COURT ABUSED ITS DISCRETION BY
      DENYING DEFENDANT'S MOTION FOR MISTRIAL
      AFTER THE PROSECUTOR IMPERMISSIBLY VOUCHED
      FOR THE CREDIBILITY OF ALL THE OFFICERS.          11

III.  THE TRIAL COURT COMMITTED ERROR BY FAILING
      TO INTERVENE SUA SPONTE TO CURE THE EFFECT
      OF IMPROPER PROSECUTORIAL ARGUMENT.               15


CONCLUSION                                                           19

Statutes:

11 Del.C. § 4214 (b)                                                 1

11 Del.C. § 4751                                                     1

Exhibits:

Roland Williams v. State, No. 12, 2002 (PER CURIAM,
      July 8, 2002)                                                 12

## TABLE OF CITATIONS

<u>CASES</u>:

<u>Bennett v. State</u>,
      164 A.2d 442, 446 (Del. 1960)..........................13

<u>Brokenbrough v. State</u>,
      522 A.2d 851 (Del. 1987).......................12,13,15,17

<u>Capano v. State</u>,
      781 A.2d 556, 595 (Del. 2001)......................8, 10

<u>Clayton v. State</u>,
      765 A.2d 940 (Del. 2001)..............................11

<u>Floyd v. State</u>,
      569 So.2d 1225,1231-32 (Fla. 1990).....................8

<u>Holtzman v. State</u>,
      1998 WL 666722 (Del. Supr.)............................8

<u>Hughes v. State</u>,
      437 A.2d 559 (Del. 1981).............................9,12

<u>Morris v. State</u>,
      795 A.2d 653, 657 (Del. 2002).........................16

<u>Pennell v. State</u>,
      602 A.2d 48 (Del. 1991)................................9

<u>Sexton v. State</u>,
      397 A.2d 540 (Del. 1979)...........................9, 13

<u>Trump v. State</u>,
      753 A.2d 963, 968 (Del. 2000).........................11

<u>United States v. Skeet</u>,
      665 F.2d 983, 985 (9th Cir. 1982)......................8

<u>Wheat v. State</u>,
      527 A.2d 269 (Del. 1987)...........................8, 10

i

## NATURE AND STAGE OF PROCEEDINGS

Kelly Churchill (hereinafter: "Churchill" or "Defendant") was charged by Indictment with one count of Delivery of a Narcotic Schedule II Controlled Substance, in violation of Title 16, Section 4751 of the Delaware Code.

Trial commenced on October 29, 2001.  On October 31, 2001, the Jury found Churchill guilty of the above charge. Subsequently, the State filed a Motion to Sentence Defendant as an Habitual Offender, pursuant to 11 Del. C. § 4214 (b).  Same was opposed.

On March 13, 2002, a Sentencing Hearing was held. After the Hearing, Churchill was sentenced to life in prison.

Defendant filed a timely Notice of Appeal.  This is his opening brief as to why his sentence must be reversed.

1

## SUMMARY OF ARGUMENT

I.    THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DEFENDANT'S
      MOTION FOR MISTRIAL AFTER OFFICER BERNA IMPERMISSIBLY
      COMMENTED ON THE EVIDENCE AND VOUCHED FOR THE CREDIBILITY OF
      OFFICERS DIGIROLOMO AND LAWSON.


II.   THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DEFENDANT'S
      MOTION FOR MISTRIAL AFTER THE PROSECUTOR IMPERMISSIBLY
      VOUCHED FOR THE CREDIBILITY OF ALL THE OFFICERS.

III.  THE TRIAL COURT COMMITTED ERROR BY FAILING TO INTERVENE SUA
      SPONTE TO CURE THE EFFECT OF IMPROPER PROSECUTORIAL
      ARGUMENT.

## STATEMENT OF FACTS

On July 8, 2001, during nighttime hours, Dover Police Officers Anthony Digirolomo and Derek Lawson (hereinafter: Digirolomo and Lawson) were conducting surveillance on a rooftop of a business, Bray's Shoe Repair, on Division Street, between New Street and Governors Ave, in Dover, Delaware. Both men were watching for any illegal drug activity in the area. This area was known to be a high crime, open air drug market. (A-7-10 & 29)

Both Digirolomo and Lawson testified that they observed Churchill walking, with his hand in the air, saying he had $30 worth of dope. (A-30 & 11-12) Both then testified that they observed Churchill, walking eastbound on Division Street, approach another male, walking westbound. Both further testified that both Churchill and the man then looked at something in Churchill's hand and briefly conversed with each other. (A-31 & 13)

Digirolomo observed Churchill hand the man a small item and the man then gave Churchill an unknown amount of money. (A-13) Lawson observed the man remove the item from Churchill's hand and then gave him money. The man is later identified as William Lloyd (hereinafter: Lloyd). (A-32)

Even though Digirolomo could not hear the conversation of the men across the street, he radioed to Dover Police Officer,

3

Nicholas Berna (hereinafter: Berna) telling him that a drug transaction had occurred. (A-15-16, 31 & 41) Berna, who was stationed two blocks away on South Governors Avenue, responded immediately and contacted both Churchill and Lloyd at the intersection of Division and South Governors Ave.(A-17-18) Berna then searched Lloyd and recovered a suspected piece of crack cocaine. Berna placed the small off-white chunky substance in a piece of paper and put it in his pocket and later gave it to Lawson. (A-19-20)  Berna also gave Lawson a twenty dollar ($20) currency bill seized from Churchill by another police officer, who searched Churchill. (A-20-21 & 26)  The small substance was later sent to the Medical Examiner's Office and tested positive for cocaine and weighed .01 grams or 10 milligrams. (A-48-50)

     The Defense made credibility an issue. During cross-examination of the State's witnesses, it was learned that there were inconsistencies, discrepancies and contradictions in the testimony. Among same was the difference in the weight of the substance from 21 grams to .1 grams to .01 grams. (A-43-44, 33 & 49-50) and whether substance was observed inside a plastic bag or not. (A-45-46)  In addition, because it was nighttime, the lighting, distance and obstructions to view conditions were raised as issues. For example, Digirolomo testified that there was a distance of 50 feet from where he was positioned and

4

Churchill and Lloyd. (A-14) Lawson testified on cross-examination that in a prior sworn proceeding the distance from him and the men involved in an exchange was 50 yards or 150 feet (A-46-47) Lawson also testified to an antenna on the roof of Bray's Shoe Store building with wires attached and going across the street, as well as to poles, and a sign from the building projecting towards the sidewalk. (A-34-38) Berna also testified that although unsure he thought there were poles on both sides of Division Street, although he did not know the number. (A-22-25)

The Defense also addressed Churchill's words heard by Digirolomo and Lawson. It was learned, on cross-examination, through the officers' testimony that Churchill was intoxicated, incoherent, swaying and slurring and messing up his words. (A-27, 39-41) Lawson testified that he did not know what Churchill meant to say when he spoke in the street. (A-30 & 41)

Berna, who was blocks away from Division Street, testified on redirect examination that Lloyd bought an amount of cocaine and then Churchill had the money from it, after being asked if there was any significance that Lloyd was found with .01 grams and Churchill was found with $20. The Trial Court, sua sponte, immediately struck Berna's testimony, telling the Jury to disregard same. (A-28) Defense later asked for a mistrial due to Berna improperly commenting upon the evidence by injecting his

5

opinion as to the ultimate issue to be determined by the jury as well as vouching for the credibility of Digirolomo and Lawson. (A-42 & 51) After taking the application under advisement and hearing further argument on the issue, the Trial Court later ruled that the curative instruction to disregard the testimony was sufficient to cure any prejudice to Churchill and denied the mistrial request. (A-52-58)

Defense renewed the mistrial application after the prosecutor in his rebuttal argument commented to the jury that the officers were simply "doing their job the best way they can as honestly as they can". Instead of granting the mistrial application, the Trial Court gave a curative instruction, reminding the jurors, among other things, that they are the sole judges of the credibility of those witnesses who testified and that an attorney is not to express any personal opinion on the credibility of any witness. (A-59-62)

Despite the curative instruction, the prosecutor continued in his rebuttal to make such comments as: "...consider the opportunity for the officers to coordinate their stories if they wanted to purposely mislead the jury in this case." (A-62). Finally, at the end of rebuttal, the prosecutor remarks: "[u]pon considering all of the evidence in this case the State **believes** that there's just but one conclusion, that there's no real

possibility that the Defendant did not deliver cocaine, and **we'd** ask you to return a verdict of guilty." (A-63, but emphasis added) To these rebuttal remarks, Defense made no objection even though throughout the Trial, including summation, the Chief Investigating Officer, Lawson, was seated next to the prosecutor at counsel table and the prosecutor, in his opening, told the jury that he was representing the State. (A-5 & 6)

I.   THE TRIAL COURT ABUSED ITS DISCRETION BY
     DENYING DEFENDANT'S MOTION FOR MISTRIAL
     AFTER OFFICER BERNA IMPERMISSIBLY
     COMMENTED ON THE EVIDENCE AND VOUCHED
     FOR THE CREDIBILITY OF OFFICERS
     DIGIROLOMO AND LAWSON.

## STANDARD AND SCOPE OF REVIEW

The standard and scope of review is abuse of discretion.

## ARGUMENT

"If the jury can be put into a position of equal vantage
with the witness for drawing the opinion, then the witness may
not give an opinion." United States v. Skeet, 665 F.2d 983, 985
(9th Cir. 1982)  "Generally, a lay witness may not testify in
terms of an inference or opinion, because it usurps the function
of the jury..." Floyd v. State, 569 So.2d 1225, 1231-32 (Fla.
1990).  Moreover, "[a]s a general rule, a witness may not bolster
or vouch for the credibility of another witness by testifying
that the other witness is telling the truth. Capano v. State, 781
A.2d 556, 595 (Del. 2001) citing Holtzman v. State, 1998 WL
666722 (Del. Supr.).  "[T]he cases are clear that improper
vouching includes testimony that *directly* or *indirectly* provides
an opinion on the veracity of a particular witness." Capano at
595, citing Wheat v. State, 527 A.2d 269 (Del. 1987), holding
that an expert witness may not directly or indirectly express
opinions concerning a particular witness' veracity. Id. at 274-

8

275.

In the case at bar, credibility of the observing officers was key.  Credibility was a central issue. The observations occurred at night from a distance.  Obstructions to surveillance did exist, although number and location and the like were in dispute.  Mr. Lloyd did not testify. Churchill was slurring and messing up his words.  The officers could not hear Churchill's and Lloyd's conversation on the street.  Therefore, credibility was a central issue in a close case.  See Hughes v. State, 437 A.2d 559 (Del. 1981).

Before the defense could even formulate an objection to Berna's testimony, the Court, sua sponte, immediately intervened and instructed the jury to disregard Berna's testimony, highlighting in effect Berna's opinion on the ultimate issue to be decided by the jury.  The Trial Court's step to mitigate the effect of the improper commenting on the evidence, although arguably warranted only brought more attention to Berna's belief that the evidence showed that Churchill had delivered .01 grams of crack cocaine to Lloyd. See Id.  Berna's opinion testimony and the Trial Court's immediate instruction to disregard the testimony prejudiced Churchill's right to a fair trial. See Pennell v. State, 602 A.2d 48 (Del. 1991) citing Sexton v. State, 397 A.2d 540 (Del. 1979).  Moreover, Berna, who did not

9

participate in any surveillance observations, in effect by his opinion on the ultimate issue, vouched for the credibility of the other officers.  In testifying that Lloyd bought an amount of cocaine with Churchill having the money from it, Berna impermissibly invaded the credibility province of the jury. (A-28) Berna's testimony if not directly, then indirectly and pointedly commented on the evidence and vouched for the credibility of the other witnesses, regardless of whether it was intentional. Wheat at 274-275.

Because credibility was at the heart of the case at bar, per Wheat, Capano and the other cases cited, Berna's opinion on the ultimate issue and vouching testimony prejudicially affected Churchill's right to a fair trial and thus a mistrial should have been granted.

10

II.   THE TRIAL COURT ABUSED ITS DISCRETION
      BY DENYING DEFENDANT'S MOTION FOR MISTRIAL
      AFTER THE PROSECUTOR IMPERMISSIBLY VOUCHED
      FOR THE CREDIBILITY OF ALL THE OFFICERS.

### STANDARD AND SCOPE OF REVIEW

The standard and scope of review is abuse of discretion.

### ARGUMENT

The prosecutor's assertion that the officers were "doing their jobs the best way" they could and as "honestly" as they could was improper because the prosecutor, in effect, was endorsing and vouching for the witnesses' testimony, which included Berna's testimony, even though the same had been stricken by the Trial Court via the curative instruction. Moreover, there was no evidentiary foundation for the prosecutor's conclusion as to the officers working "honestly". (A-59)  "Where prosecutors fail to provide an evidentiary foundation for their conclusions about the truthfulness of a witness, they impermissibly tip the scales against the defense." Clayton v. State, 765 A.2d 940 (Del. 2001), citing Trump v. State, 753 A.2d 963, 968 (Del. 2000).

Credibility was the central issue in the case at bar.  To first have Berna improperly comment on the evidence and vouch for the officers testimony, by expressing his opinion on the ultimate jury issue and to then have the prosecutor vouch for the

11

officers' honesty in his rebuttal argument, greatly increased the prejudice to Churchill.  Although the Trial Court issued a curative instruction, the cumulative damage had already been done.  The prosecutor's remarks to the jury about the officers' work ("doing their job the best way they can") and their honesty, which included lack of bias and prejudice,(A-59), impermissibly prejudiced Churchill and denied him his right to a fair and impartial trial. See, *e.g.*, <u>Roland Williams v. State</u>, No. 12, 2002 (Per Curiam, July 8, 2002); <u>Hughes v. State</u>, 437 A.2d 559 (Del. 1981); <u>Brokenbrough v. State</u>, 522 A.2d 851 (Del. 1987). The prosecutor's opinionated remarks improperly suggested to the jury that the jury must believe the police officers are doing their best and telling the truth, without bias or prejudice, and thus there are no credibility issues, including no "material inconsistencies" and the like. (A-59) The prejudice to Churchill was sever because credibility of what the officers may have seen and heard and remembered were central to the defense of the case. For the prosecutor to vouch for the officers doing their best work with, more or less, pure motives and honesty was clearly improper.

"Although the prosecutor operates within an adversary system, his duty is to seek justice not merely convictions. 'A prosecuting attorney represents all the people, including the

12

defendant who was being tried.  It is his duty to see that the
State's case is presented with earnestness and vigor, but it is
equally his duty to see that justice be done by giving defendant
a fair and impartial trial.'" Brokenbrough v. State at 855,
quoting Sexton v. State, 397 A.2d 540, 544 (Del. 1980), quoting
Bennett v. State, 164 A.2d 442, 446 (Del. 1960).

Defense's objection to the prosecutor's vouching and the
Trial Court's instruction to the jury to disregard the
prosecutor's personal opinion did not mitigate the error and the
prejudicial effects because credibility was key in the defense of
the case.  It was not like Churchill had another defense argument
to make before the jury, which was equal to or stronger than the
credibility arguments.  Challenging what the officers may have
seen and heard and remembered along with the inconsistencies and
discrepancies in their testimony was the sole defense for
Churchill.  The State had the burden of proof and if Churchill
showed and the jury found that the officers' testimony was filled
with inconsistencies and discrepancies, like the difference in
the distance involved and in the suspected crack cocaine's
weight, etc., (A-14, 33, 43-44, 46-47 & 49-50),  then the State
would not be able to satisfy its burden.  However, this defense
becomes a nullity when the detrimental culmination of Berna's and
the prosecutor's opinions on the evidence are improperly injected

13

into the course of the trial, including rebuttal argument immediately before jury deliberations without further defense argument.  In the case at bar, given the nature of the defense and the culmination of errors, which was not effectively mitigated by the Trial Court's instructions to the jury, a mistrial should have been granted.

III.  THE TRIAL COURT COMMITTED ERROR BY FAILING
      TO INTERVENE SUA SPONTE TO CURE THE EFFECT
      OF IMPROPER PROSECUTORIAL ARGUMENT.

### STANDARD AND SCOPE OF REVIEW

The standard and scope of review is plain error.

### ARGUMENT

"It is unprofessional conduct for the prosecutor to express

his personal belief or opinion as to the truth or falsity of any

testimony or evidence or the guilt of the defendant."

Brokenbrough at 855, citing with approval the ABA standards, the

Prosecution and Defense Functions, 5.8(b) Argument to the Jury

(Approved Draft, 1971).

In the case at bar, during rebuttal argument, while arguing

whether 50 feet or 50 yards was a credibility issue or difference

of opinion, the prosecutor commented: "... consider the

opportunity for the officers to coordinate their stories if they

wanted to purposely mislead the jury in this case." (A-62)  The

prosecutor's comment here implied that the State does not believe

the police would mislead the jury, or, in the alternative, the

State does not believe the officers would be untruthful.  The

prosecutor's comment here came immediately after the Trial Court

gave a curative instruction because the prosecutor had vouched

for the veracity of the officers. (A-59-62) However, the defense

made no objection to this comment and the Trial Court did not

15

intervene. Therefore, this prosecutorial comment and the comment to follow, is reviewed for plain error. See Morris v. State, 795 A.2d 653, 657 (Del. 2002).

"To constitute plain error, "credibility must be a central issue in a close case" and the State's improper statements must "be so clear and defense counsel's failure to object so inexcusable that a trial judge...has no reasonable alternative other than to intervene." Id., quoting Trump at 964.

Because the prosecutor continued to imply that the officers were not misleading the jury and thus doing their best work honestly, the Trial Court should have declared a mistrial or, at least, intervened again to attempt to cure the prosecutor's error. Again, credibility issues were central to the case. The case was close because of these issues. The errors of the prosecutor combined with the error of Berna commenting on the evidence and vouching for Digirolomo and Lawson, compounded the prejudice to Churchill. However, the icing on the cake came when immediately before the jury went to deliberate, the prosecutor commented: "[u]pon considering all of the evidence in this case the State believes that there's just but one conclusion, that there's no real possibility that the Defendant did not deliver cocaine, and we'd ask you to return a verdict of guilty." (A-63) Although the prosecutor did not use the word "I", the first

16

person, he already told the jury that he represented the State.
The implication from his comment and the fact that Lawson was
sitting with him throughout the entire trial, including
summation, was that he, the prosecutor, and Lawson, the chief
investigating officer, "we", believed that Churchill was
guilty.(A-5 & 6) This argument was clearly improper.  See
Brokenbrough at 855. The prosecutor did not use such words as the
evidence shows or the like, but instead chose the words:
"believes" and "we".  When improper argument is made by a
prosecutor, the failure of defense counsel to object may be for
tactical reasons or a failure to immediately recognize the error.

> "The line between permissible and impermissible argument is
> a thin one. Neither advocate may express his personal
> opinion as to the justice of his cause or the veracity of
> witnesses.  Credibility is solely for the triers, but an
> advocate may point to the fact that circumstances or
> independent witnesses give support to one witness or cast
> doubt on another.  The prohibition goes to the advocate's
> personally endorsing or vouching for or giving his opinion;
> the cause should turn on the evidence, not on the standing
> of the advocate, and the witnesses must stand on their own."
> Brokenbrough at 859, citing Commentary ABA Standards
> relating to the Prosecution Function and the Defense
> Function, p. 128

Because Churchill was severely prejudiced by all the compounded
errors, which took the credibility issues away from the province
of the jury, the Trial Court should have intervened. Credibility
was not left solely for the triers of fact.  Instead, through the
course of the trial, including summation, the jury's function was

17

usurped by improper witness and prosecutorial opinions, which impermissibly vouched for the veracity of the State's witnesses and impermissibly commented on the evidence, including that the "State believes" that Churchill was guilty, all to the detriment of Churchill.  Berna and the prosecutor's opinions, expressed and implied through their improper comments, individually and collectively denied Churchill a fair and impartial trial. Failure for the Trial Court to intervene was plain error.

## CONCLUSION

For the reasons cited in the foregoing arguments, Defendant's
conviction must be reversed.

                    Respectfully submitted,


                    *Deborah L Carey*
                    Deborah L. Carey, Esquire
                    Assistant Public Defender
                    Office of the Public Defender
                    45 The Green
                    Sykes Building
                    Dover, DE 19901
                    (302) 739-4476 ext. 207
                    Bar I.D. 002852
                    Attorney for Defendant-Below
                    Appellant